IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER L. BARRY<br>n/k/a JENNIFER L. HENNING,<br><br>                Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, et al.,<br><br>                Defendants. | 8:13-CV-190<br><br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the defendants' motion for summary judgment (filing 84). For the reasons discussed below, this motion will be granted in part and denied in part.

BACKGROUND

      The plaintiff Jennifer L. Henning, who has diabetes, was employed as a pre-service trainee by the Nebraska Department of Correctional Services (NDCS) beginning on April 2, 2012. Filing 85 at 8. She was terminated from her position on April 24. *See* filing 85 at 8. She has sued the State of Nebraska, the NDCS, William Boucher, Ken Sturdy, and Michael Kenney, alleging sex discrimination, disability discrimination, retaliation, and civil conspiracy. Filing 45 at 1, 10–11. Boucher was a Training Specialist with the NDCS, and was the plaintiff's training instructor. Filing 85 at 7. Sturdy was the Training and Development Manager with the NDCS. Filing 85 at 7. Kenney was the Warden at the Omaha Correctional Center with the NDCS. Filing 85 at 8. The defendants contend that they are entitled to summary judgment on the plaintiff's claims, based on the facts set forth below. Filing 85 at 5.

      A. <u>The plaintiff's ability to carry and use medical supplies</u>

      First, the plaintiff alleges that she was not permitted to use or carry the medical supplies necessary to treat her diabetes while she was in training at the NDCS Staff Training Academy (Academy). Filing 45 at 10–11. The parties present significantly different accounts of the events relating to this allegation. These accounts are briefly summarized in turn.

*1. The plaintiff's version of events*

      According to the plaintiff, on or about April 4, 2012, she presented a doctor's note to an NDCS human resources representative. Filing 89 at 4, 20.

The note stated that the plaintiff had diabetes and needed "to check blood sugars at work at least daily and as needed." Filing 89 at 4. Then, on the first day of the plaintiff's training at the Academy, she gave a copy of the doctor's note to Boucher. Filing 89 at 4. Boucher threw the note in the trash can, and said "Okay, you're diabetic. That's fine. It doesn't affect you here." Filing 89 at 4–5. Boucher also told the plaintiff that she could not carry her glucometer (a device used for measuring blood sugar) or her glucagon (a medication for treating hypoglycemic episodes) on her person during training because they were "contraband." Filing 89 at 5.

The plaintiff alleges that on April 5, 2012, she contacted her physician to ask for "additional doctor's notes" to give to the defendants. Filing 89 at 20. Her physician then contacted Sturdy to make further requests for accommodations for the plaintiff's diabetes. Filing 89 at 20. The plaintiff also alleges that the defendants were provided with a copy of her emergency care plan. Filing 89 at 20.

Next, the plaintiff alleges that during her training, Boucher frequently reprimanded her in relation to her efforts to manage her diabetes. First, she alleges that one day during training, she used her glucometer to test her blood sugar in the bathroom before lunch. *See*, filing 89 at 6; filing 89-9 at 10, 12. She looked for, but could not locate, a biohazard disposal container in which to dispose of her used lancets. Filing 89 at 6. She alleges that, in fact, there was no functioning biohazard disposal container at the Academy. Filing 89 at 5. The plaintiff instead put the lancets in a pop bottle filled halfway with water—a technique she learned in her paramedic training. Filing 89 at 6. Boucher saw the plaintiff throw the bottle in the trash in the Academy break room, and reprimanded her in front of the other trainees, saying that "it wasn't safe, it's against the rules, [the plaintiff] shouldn't have it in the first place." Filing 89 at 6; filing 89-9 at 10–11. The plaintiff describes this reprimand as "loud" and "intimidating." Filing 89-9 at 11. According to the plaintiff, she did not ask Boucher, or anyone else, where to find a biohazard container before being reprimanded by Boucher. Filing 89 at 6.

Additionally, the plaintiff alleges that on April 11, 2012, a search of the training classroom was conducted. Filing 89 at 7, 20. The plaintiff's glucometer was discovered in her bag. *See,* filing 89 at 7; filing 89-9 at 9. Boucher stated that the glucometer was contraband, because it was an electronic device. Filing 89 at 7. Also on April 11, the plaintiff alleges that she submitted an incident report "outlining her diabetic condition" at Boucher's request. Filing 89 at 21. According to the plaintiff, her incident report was not forwarded to an ADA coordinator, and no one ever instructed her to contact the ADA coordinator about accommodations for her diabetes. Filing 89 at 8, 22.

2

*2. The defendants' version of events*

According to the defendants, the plaintiff verbally informed Boucher of her diabetes on the first day of her training at the Academy. Filing 85 at 8–9. She approached him and asked if there was a biohazard disposal container at the Academy. Filing 85 at 9. The following day, he showed her the location of the disposal container, but realized there was no bag inside. Filing 85 at 9. Because the disposal container was inadequate, he advised her to dispose of her medical supplies off-site. Filing 85 at 9. He told Sturdy about the missing bag, and Sturdy informed maintenance. Filing 85 at 31.

Further, according to the defendants, Boucher never told the plaintiff that her medical supplies were contraband, or that she could not carry them with her at the Academy. Filing 85 at 15. According to the defendants, there were no medical restrictions at the Academy. Filing 85 at 15. Additionally, the defendants contend that Boucher never reprimanded the plaintiff in relation to the disposal of her lancets or her need to leave class to check her blood sugar levels. Filing 85 at 16. Finally, the defendants contend that Boucher "never addressed anything regarding Barry's medical condition in front of the training class." Filing 85 at 15.

B. <u>Alleged inappropriate conversation</u>

On April 17, 2012, Boucher overheard part of a conversation between the plaintiff and a male trainee. Filing 85 at 10. According to Boucher, he believed the conversation might be inappropriate for the workplace. Filing 85 at 10. According to the plaintiff, he accused her of saying something about a "happy ending," a phrase that Boucher interpreted to be of a sexual nature. *See*, filing 89 at 10; filing 89-9 at 22. The plaintiff contends that she said nothing with a sexual connotation in her conversation with the other trainee. Filing 89 at 10. The parties agree that Boucher spoke to the plaintiff and the other trainee separately, and reminded each "to be mindful of their language, conversations, and behavior in the work environment to ensure that their comments are not misinterpreted or taken out of context." Filing 85 at 10. According to the plaintiff, Boucher also threatened to terminate her. Filing 89 at 10.

Following her conversation with Boucher, the plaintiff submitted an incident report to Sturdy, requesting an investigation into what she characterized as Boucher's defamatory and offensive accusations. Filing 85 at 10; filing 86-17. Sturdy spoke to Boucher about the situation, but took no further action. Filing 85 at 10–11.

C. <u>Hypoglycemic episode</u>

The following facts are not meaningfully disputed. On April 18, 2012, the plaintiff and her training class attended a firearms course at the firing range. Filing 85 at 11. Near the end of the day, the plaintiff asked to return to the shelter to check her blood sugar, and was permitted to do so. Filing 85

3

at 11. The plaintiff experienced symptoms related to low blood sugar. Filing 85 at 11. She took a glucose tab, and her blood sugar returned to normal. Filing 85 at 11. Boucher offered to contact emergency medical services or take the plaintiff to the hospital, but she said she did not need medical assistance. Filing 85 at 11. She attempted to complete the shooting exercises, but was unable to do so. Filing 85 at 11–12. Boucher again offered to obtain medical assistance, but the plaintiff refused. Filing 85 at 12. After the firearms course, the staff exited the shooting range in vans. Filing 85 at 12. The plaintiff began to feel nauseous, and the driver of the van she was riding in stopped the van. Filing 85 at 12. Although the plaintiff said she did not need medical assistance, Boucher decided to take her to the hospital. Filing 85 at 12. The plaintiff was treated and released the same day. Filing 85 at 12. The plaintiff alleges that after the episode, on April 20, 2012, she provided the defendants with a note from her doctor indicating that she should be permitted to carry glucagon with her during training. Filing 89 at 21.

D. <u>Termination</u>

On April 17, Boucher sent an email to Sturdy about what Boucher considered to be the plaintiff's behavioral issues. Filing 85 at 14. Boucher wrote that the plaintiff did not take instruction well, frequently challenged the instructor and NDCS policies, talked during class, asked other trainees inappropriate personal questions, and shared personal information about other trainees with the class. Filing 85 at 14; filing 86-7; *see* filing 85 at 13. He also reported the conversation he overheard the plaintiff having that he believed to be inappropriate. Filing 86-7. He concluded, "It is of my opinion that Ofc. Barry's attitude / demeanor in the affective domain is not acceptable for para-military work environment of NDCS." Filing 86-7. He also indicated that at least one trainee was likely to submit an incident report complaining about the plaintiff's behavior. Filing 86-7. The plaintiff disputes that Boucher's email was accurate, and presents evidence that other students did not consider her disruptive, that she did not challenge the instructor or talk during class, and that she did not share personal information about other trainees. *See* filing 89 at 12–16.

But two other trainees, Michelle Matlock and Emma Grasmick, filed incident reports with Sturdy complaining about the plaintiff's behavior. *See,* filing 85 at 14; filing 86-5; filing 86-6. Specifically, they complained that the plaintiff let other trainees know that Grasmick was pregnant, that she made inappropriate comments, and that she disrupted class. *See,* filing 85 at 13; filing 86-5; filing 86-6. Grasmick also shared her opinion that the plaintiff had endangered the safety of others by attempting to complete the shooting exercise at the firing range despite her illness. Filing 86-5. The plaintiff contends that these reports are not accurate. *See* filing 89 at 12–16. She contends that Grasmick and Matlock frequently harassed her because she

4

sometimes left class to test her blood sugar. Filing 89 at 14–15. The plaintiff stated in her deposition that she complained to Boucher about their behavior, and that other students also complained to Boucher on her behalf. *See*, filing 89 at 15; filing 89-9 at 14, 17. However, the plaintiff alleges, Boucher took no action, and told the plaintiff that she was being too sensitive. Filing 89 at 15. The defendants, conversely, contend that the plaintiff never reported to Boucher that she was being harassed. Filing 85 at 13.

On April 23, 2012, Sturdy emailed Kenney recommending that the plaintiff's employment be terminated. Filing 85 at 14. The parties agree that Sturdy made this recommendation on the basis of Boucher's email and the two incident reports filed by other trainees. Filing 85 at 14. Kenney made the final decision to terminate the plaintiff's employment. *See* filing 85 at 15. He stated in his answers to the plaintiff's interrogatories that he believes he reviewed Boucher's email, the incident reports filed by the other trainees, the incident report the plaintiff filed regarding the alleged inappropriate conversation, and other documents in coming to his decision. Filing 89-7 at 2–3. He further stated in his affidavit that he did not terminate the plaintiff's employment based on her medical condition or her sex—an assertion the plaintiff disputes. *See*, filing 86-1 at 3; filing 89 at 18.

On April 24, 2012, the plaintiff was summoned to Kenney's office and informed that her employment was terminated. Filing 85 at 14. Kenney told the plaintiff that she was terminated because of her disruptive behavior and gossiping, not because of her diabetes or her hypoglycemic episode at the firing range. Filing 85 at 14.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. *See* Fed. R. Civ. P. 56(a).

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Torgerson*, 643 F.3d at 1042. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must

do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

ANALYSIS

The plaintiff has brought claims against the defendants alleging sex discrimination, disability discrimination, retaliation, and civil conspiracy. Filing 45 at 1, 10–11. Specifically, the plaintiff claims that she was subjected to a hostile work environment on the basis of her sex; that the defendants failed to provide reasonable accommodations for her disability, terminated her on the basis of her disability, and subjected her to a hostile workplace on the basis of her disability; that the defendants retaliated against her for engaging in protected activity; and that the individual defendants conspired to harass, discriminate against, and retaliate against her. Filing 45 at 10–11. The defendants move for summary judgment on each of these claims, except—as will be discussed below—on the plaintiff's claim that she was subjected to a hostile work environment on the basis of her disability, and her claim that she was retaliated against for engaging in conduct protected by the Rehabilitation Act. *See* filing 85. Additionally, the defendants assert qualified immunity as a defense to the plaintiff's claims. Filing 85 at 41.

A. Hostile work environment on the basis of sex

First, the plaintiff claims that the defendants discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act. *See* filing 45 at 10. Specifically, she contends that they subjected her to a hostile work environment on the basis of sex. Filing 45 at 10. This claim is based on the plaintiff's allegations that Boucher accused her of having an inappropriate conversation at work with a male trainee, that she filed an incident report disputing the accusation, and that Sturdy conducted an insufficient investigation in response to that report. Filing 89 at 35–37. According to the plaintiff, her incident report constituted "a complaint of sexual harassment" and "[t]he sufficiency of Sturdy's actions certainly must be left to the jury." *See* filing 89 at 36–37.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges

of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013). To establish a hostile work environment claim, the plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of her employment. *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 863 (8th Cir. 2010).[1]

Here, the parties agree that the plaintiff is a member of a protected class. Filing 85 at 20. But the defendants argue that the plaintiff cannot establish that she was harassed, that such harassment was based on sex, or that such harassment affected a term or condition of her employment. Filing 85 at 20–21.

As the Court understands it, the plaintiff contends that Boucher harassed her by accusing her of having an inappropriate conversation at work. *See* filing 89 at 36–37. The plaintiff has produced evidence that this accusation was unwelcome to her. *See* filing 89 at 10. This is sufficient evidence for a reasonable jury to conclude that the plaintiff was subjected to unwelcome harassment. *Cf. Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002).

However, the plaintiff has not produced evidence sufficient for a reasonable jury to find that this harassment was based on sex. She argues that Boucher's accusation was, in essence, an accusation that she had sexually harassed the trainee with whom she was conversing. *See* filing 89 at 26, 35–37. Her argument seems to be that because sexual harassment can give rise to a hostile work environment claim, and because Boucher—in her view—accused her of sexual harassment, it must be the case that Boucher harassed her based on her sex. The plaintiff attempts to bolster this argument by characterizing the incident report she filed to clear her name as a "complaint of sexual harassment." Filing 89 at 36.

---

[1] In a hostile work claim involving mistreatment by non-supervisory personnel, the plaintiff must also show that her employer knew or should have known of the harassment and failed to take proper action. *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012). The parties have not substantively addressed whether Boucher should be considered a supervisor. But because the plaintiff has not produced sufficient evidence of each of the other elements of her hostile work environment claim, the Court does not reach this issue.

7

But, as the Court explained in detail in a previous memorandum and order in this case, the mere fact that the plaintiff was accused of sexual harassment (as opposed to some other disciplinary violation), does not establish that the accusation was based on sex. *See* filing 44 at 7. The plaintiff offers no other argument or evidence demonstrating that Boucher's accusation was motivated by the plaintiff's sex. Similarly, even assuming that Sturdy's investigation was inadequate—as the plaintiff argues—the plaintiff has produced no evidence that such inadequacy was motivated by the plaintiff's sex.

In sum, the plaintiff has failed to produce evidence sufficient for a reasonable jury to find that Boucher harassed her on the basis of sex. Thus, the Court need not reach the defendants' other arguments. The Court will grant the defendants summary judgment on the plaintiff's sex discrimination claim.

B. <u>Disability discrimination</u>

Next, the plaintiff alleges that the defendants discriminated against her on the basis of disability in violation of section 504 of the Rehabilitation Act. Filing 45 at 10–11. The defendants move for summary judgment as to the plaintiff's claims that they failed to provide reasonable accommodations for her disability, and that they terminated her based on her disability. Filing 85 at 30.

The Rehabilitation Act prohibits discrimination against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). Thus, to make out a Rehabilitation Act claim, the plaintiff "needs to show [s]he was 'disabled,' was 'otherwise qualified,' and was the victim of 'discrimination' 'solely' because of [her] disability." *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). At this stage of the proceedings, the parties do not dispute that the plaintiff was disabled, or that she was otherwise qualified for her position. Rather, the defendants contend that the plaintiff has not produced evidence sufficient for a reasonable jury to find that she was discriminated against on the basis of her disability. Filing 85 at 30.

The two different kinds of discrimination at issue here are failure to make reasonable accommodations, and disparate treatment (also known as intentional discrimination). *See* filing 45 at 10–11. At the summary judgment stage, the Eighth Circuit applies different analytical frameworks to these two kinds of discrimination. *See Peebles*, 354 F.3d at 765–66.

*1. Reasonable accommodations*

The failure to make reasonable accommodations for an employee who has a disability is prohibited discrimination under the Rehabilitation Act. *Peebles*, 354 F.3d at 766. Such discrimination occurs if "a covered entity does not make reasonable accommodation to the known physical or mental

8

limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Id.* (internal alterations omitted) (quoting 29 C.F.R. 1630.9(a)).

The plaintiff alleges that the defendants failed to make reasonable accommodations for her disability by refusing to permit her to carry her glucometer and glucagon at the Academy, by failing to provide an appropriate disposal container for her used glucometer lancets, by not allowing her to carry her glucagon at the firing range, and by not providing medical assistance to her when she had a hypoglycemic episode at the firing range. *See* filing 45 at 4, 8, 10–11.

The defendants do not argue at this stage of litigation that the requested accommodations would be unreasonable or cause them undue hardship. Rather, the defendants contend that the plaintiff has produced no evidence that the defendants did, in fact, deny any of her requests for accommodations. Filing 85 at 30–31.

However, the plaintiff has produced evidence of at least some of her allegations. First, she has produced evidence which, if credited by the trier of fact, establishes that she was denied permission to carry her glucometer and glucagon at the Academy. In her deposition, the plaintiff said that Boucher told her those items were contraband when she presented him with her doctor's note, filing 89-9 at 6; that Boucher told her the glucometer was not permitted after it was found in her bag during training, filing 89-9 at 10; and that when he saw her throwing away her used lancets, Boucher told her that she "shouldn't have [the glucometer] in the first place," filing 89-9 at 10–11.

Additionally, she has produced evidence which, if credited by the trier of fact, shows that the defendants did not provide her with a way to dispose of her used glucometer lancets. The plaintiff stated in her deposition that there was no functioning biohazard container at the Academy, filing 89-9 at 19, and that she was reprimanded for using an alternate method to dispose of her lancets, filing 89-9 at 10–11. And the plaintiff points to an email Sturdy sent months after the plaintiff was terminated in which Sturdy indicated that a biohazard disposal container had been dropped off, without the inner bag. Filing 89-4. Sturdy wrote "We don't really need or want a biohazard box in the building but if it is required we still need the insert." Filing 89-4. The plaintiff has not, however, produced evidence that she was denied medical assistance or the use of her medical supplies during her hypoglycemic episode at the firing range.

Because the plaintiff has produced evidence that the defendants denied her permission to carry her glucometer and glucagon at the Academy, and did not provide her with an appropriate way of disposing of her used lancets, the

9

Court will deny summary judgment as to the plaintiff's claim that the defendants failed to provide reasonable accommodations for her disability.

*2. Termination*

Next, the plaintiff alleges that she was terminated, at least in part, on the basis of her disability. Filing 45 at 10. The defendants move for summary judgment, arguing that the plaintiff has not produced evidence that the plaintiff's disability was a factor in her termination. Filing 85 at 31–32. The plaintiff did not respond directly to the defendants' motion for summary judgment as to this claim. However, in another portion of her brief, the plaintiff does advance an argument that may be relevant to this issue.

In her discussion of her civil conspiracy claim, the plaintiff argues that Kenney's decision to terminate her employment was not, itself, motivated by discriminatory intent. Filing 89 at 24. Rather, she contends that "Kenny, [sic] was primarily an unwitting cat's paws [sic] for Boucher's discriminatory intent, and to corroborate Sturdy's unlawful conduct." Filing 89 at 24. She avers that Study "relied blindly on Boucher's recommendations and fabrications" when he recommended to Kenney that the plaintiff be terminated, and that "Kenney's decision to terminate the Plaintiff was based on the information provided to him via Sturdy, via Boucher." Filing 89 at 17, 18.

Under a cat's-paw theory of liability, an employer can be held "liable for the animus of a supervisor who was not charged with making the ultimate employment decision" where (1) that supervisor performs some act motivated by discriminatory animus, (2) the act was intended to cause an adverse employment action, and (3) the act was a proximate cause of the ultimate employment action. *Staub v. Proctor Hosp.*, 562 U.S. 411, 415, 422 (2011).

Here, the basis for the plaintiff's cat's-paw liability claim is the email Boucher sent to Sturdy, in which he wrote that the plaintiff was disruptive in class, that she shared personal information about other trainees, and that she had a conversation with another trainee that he believed to be inappropriate. Thus, to survive summary judgment, the plaintiff must produce evidence sufficient for a reasonable trier of fact to find that this email was motivated by discriminatory animus, that it was intended to cause an adverse employment action, and that it was a proximate cause of the plaintiff's eventual firing.

First, the plaintiff has produced evidence that, if credited by the trier of fact, is sufficient for a reasonable trier of fact to find that Boucher's email was motivated by discriminatory intent. For instance, in her deposition, the plaintiff described how Boucher refused to allow her to carry her glucometer and glucagon, filing 89-9 at 6, embarrassed her in front of the other trainees by reprimanding her for disposing of her used lancets in the trash, filing 89-9 at 10–11, and refused to intervene when other trainees harassed her for

10

leaving class to test her blood sugar, filing 89-9 at 14–17. Additionally, the plaintiff stated in her deposition that she did not make the inappropriate statements Boucher said in his email that she made. Filing 89-9 at 22. From these circumstances, a reasonable jury could infer that Boucher's email was motivated by discriminatory animus based on the plaintiff's disability, and that his stated reasons for sending the email were pretextual.

Second, the plaintiff has produced sufficient evidence for a reasonable jury to find that Boucher sent the email intending to cause an adverse employment action. Boucher stated in the email, "I am writing to make you aware of observations and issues relative to Pre-Service Student Ofc. Barry, Jennifer." Filing 86-7. It was sent to individuals with the power to formally recommend the termination of the plaintiff's employment—as Sturdy, indeed, did. And Boucher implicitly suggests that the plaintiff's employment be terminated, stating, "It is of my opinion that Ofc. Barry's attitude / demeanor in the affective domain is not acceptable for para-military work environment of NDCS." Filing 86-7.

Finally, there is sufficient evidence for a reasonable trier of fact to find that the email was a proximate cause of the plaintiff's termination. The parties do not genuinely dispute that Sturdy relied on Boucher's email when he decided to recommend terminating the plaintiff's employment, or that Kenney also relied on Boucher's email in making his final determination to terminate the plaintiff's employment. *See* filing 85 at 14–15.

Accordingly, the plaintiff has produced sufficient evidence for a reasonable trier of fact to conclude that she was terminated on the basis of her disability. The Court also notes—as it did in a previous memorandum and order in this case—that both sides have briefed the plaintiff's hostile work environment claim as if it is solely a claim of sex discrimination, and not a claim of disability discrimination. *See* filing 44 at 4 n.2. However, the plaintiff's operative complaint alleges that the plaintiff "was subject to a hostile work environment based upon her sex and/or disability." Filing 45 at 10. As the defendants have not moved for summary judgment as to this particular claim of disability discrimination, it, too, shall proceed to trial, alongside the plaintiff's other disability discrimination claims.

## C. Retaliation

Next, the plaintiff alleges that she "engaged in several acts of protected conduct for which she was retaliated against, and ultimately terminated for." Filing 89 at 26. She argues,

> The timing in the present case is highly suspect, the Plaintiff requested accommodation and she was reprimanded; she requested accommodation and she was falsely accused of sexual harassment; she protested that accusation and requested an

11

> investigation consistent with state policies, and unsupported allegations about her were forwarded to those who would determine whether or not to continue her employment; she had a medical episode and she was terminated.

Filing 89 at 26.

As an initial matter, it is apparent to the Court that the plaintiff alleges retaliation under both Title VII and the Rehabilitation Act. Her claims that she was reprimanded in retaliation for requesting accommodations, that she was falsely accused of sexual harassment in retaliation for requesting accommodations, and that she was terminated in retaliation for having a hypoglycemic episode are clearly cognizable under the Rehabilitation Act, which deals with disability discrimination.

The plaintiff also alleges that "unsupported allegations about her were forwarded" in retaliation for the incident report she filed protesting Boucher's accusation that she sexually harassed another trainee. Filing 89 at 26. The plaintiff has argued, at different points in her brief, both that Boucher falsely accused her of sexual harassment in retaliation for requesting accommodations for her disability, and that Boucher falsely accused her of sexual harassment based on her sex. *Compare* filing 89 at 26 *with* filing 89 at 36–37. Accordingly, the Court understands the plaintiff to be advancing two alternative retaliation claims with respect to her allegations that Boucher's sent the email in retaliation for protected activity: one under Title VII, and one under the Rehabilitation Act.

The defendants have moved for summary judgment only as to the plaintiff's retaliation claims under Title VII. *See* filing 85 at 32. Title VII prohibits retaliation against an employee because she has opposed any practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a). A plaintiff states a prima facie case for retaliation by alleging facts showing that (1) she engaged in protected activity, (2) subsequent materially adverse action was taken against her by her supervisors, and (3) the materially adverse action was causally linked to the protected activity. *Ellis v. Houston*, 742 F.3d 307, 323 (8th Cir. 2014). Retaliation claims under Title VII must be proven according to traditional principles of "but-for" causation, rather than the more relaxed "motivating factor" standard applied to national origin discrimination cases. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Title VII protects a broad range of opposition to unlawful discrimination, not just formal complaints. *See King v. Hardesty*, 517 F.3d 1049, 1064 (8th Cir. 2008) abrogated on other grounds by *Torgerson v. City of*

*Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). A plaintiff need not establish that the conduct she opposed was actually a violation of Title VII. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). However, she must demonstrate that she had a good faith, objectively reasonable belief that the underlying conduct violated Title VII. *Id.*

Here, as the Court explained above, Boucher's accusation of sexual harassment did not amount to a violation of Title VII, because the plaintiff has failed to produce evidence showing that the accusation was made because of her sex. It may be the case that the plaintiff has a good faith belief that Boucher's accusation was based on her sex. But such a belief would not be objectively reasonable, because the plaintiff has produced no evidence to suggest that Boucher made his accusation based on her sex. Accordingly, the plaintiff has not produced evidence sufficient for a reasonable jury to find that she engaged in "protected activity," under the meaning of Title VII. Thus, the Court will grant summary judgment to the defendants on the plaintiff's claim of Title VII retaliation. However, as the defendants have not moved for summary judgment as to the plaintiff's retaliation claims under the Rehabilitation Act, those claims shall proceed to trial.

### D. Civil conspiracy

The defendants have moved for summary judgment as to the plaintiff's civil conspiracy claim. Filing 85 at 39. The plaintiff moves to dismiss that claim, agreeing with the defendant that "there was no concerted effort between Kenny with Boucher and Sturdy to terminate the Plaintiff in violation of the law." Filing 89 at 24–25. Accordingly, the defendants' motion for summary judgment is granted as to the plaintiff's civil conspiracy claim.

### E. Qualified immunity

The defendants argue that even if the plaintiff has established sufficient facts with respect to some of her claims, they are still entitled to qualified immunity as to the claims brought against them in their individual capacities. Filing 85 at 41. Though the plaintiff does not clarify which claims in particular she is bringing against the defendants in their individual capacities, the only claims remaining in this case are for alleged violations of the Rehabilitation Act.

The qualified immunity defense is available for Rehabilitation Act claims. *Roberts v. City of Omaha*, 723 F.3d 966, 972 (8th Cir. 2013). To decide whether a defendant is entitled to qualified immunity, the Court must ask (1) whether the facts alleged, construed in the light most favorable to nonmoving party, establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). Thus, Boucher, Sturdy, and Kenney are entitled to summary judgment unless the

plaintiff has produced evidence showing they violated a clearly established right under the Rehabilitation Act.

*i. Boucher*

The defendants argue that Boucher is entitled to summary judgment on the plaintiff's disability discrimination claims because

> Boucher's personal involvement in these matters consist of the following: 1) Boucher was Barry's instructor at the Staff training academy; 2) Boucher showed Barry where the biohazard disposal box was located at the [Academy] and informed Sturdy that the box was missing the inner liner; 3) Boucher verbally reminded Barry she need[ed] to keep work conversations appropriate after overhearing what he believed to be an inappropriate conversation with another trainee; 4) When Barry had a medical episode at the firearms training, Boucher asked if Barry needed medical assistance several times, and took her to the hospital despite her insisting she was fine; 5) Boucher noted that Barry did not take instruction well and was challenging of intructor's [sic] teachings; 6) Boucher attempted to address Barry's behavior, but she was defensive and argumentative; 7) Boucher sent an email to Tom English and Ken Sturdy to inform them of Barry's poor behavior at the [Academy].

Filing 85 at 46–47.

In other words, the defendants argue that Boucher is entitled to qualified immunity because the plaintiff has not produced evidence to show that Boucher took any action against her that was prohibited by federal law. However, as discussed above, the plaintiff has produced evidence sufficient for a reasonable trier of fact to find that Boucher denied her the use of her glucometer and glucagon at the Academy, and that he sent an email motivated by discriminatory animus, which was intended to and did cause an adverse employment action.

Thus, the plaintiff has produced evidence sufficient to create a genuine issue of material fact as to what actions Boucher took. And the defendants do not argue that the plaintiff's allegations, if taken as true, do not constitute a violation of clearly established rights under the Rehabilitation Act.[2]

---

[2] The defendants do argue, with respect to the plaintiff's sex discrimination claim, that "it was not 'clearly established' that the conduct attributed to the Defendants . . . was 'so extreme' that it amounted to a 'change in the terms and conditions of employment.'" Filing 85 at 44. However, this argument has no bearing on whether the defendants' alleged actions violated a clearly established right under the Rehabilitation Act.

Accordingly, the Court will deny the plaintiff's motion for summary judgment on the grounds of qualified immunity as to Boucher.

*ii. Sturdy*

The defendants argue that Sturdy is entitled to qualified immunity on the grounds that

> Sturdy's personal involvement in these matters consist of the following: 1) Barry requested that Sturdy investigate accusations made against her by Boucher; 2) Sturdy spoke with Boucher regarding the allegations; 3) Sturdy, after learning that Boucher gave Barry a verbal warning regarding keeping work conversations appropriate, determined that no further inquiry was need[ed]; 4) Sturdy recommended Barry's termination based on the reports of her poor behaviors in her training class; 5) Sturdy contacted maintenance regarding the missing bag in the biohazard disposal container at the Staff Training Academy.

Filing 85 at 46.

As with Boucher, the defendants argue that Sturdy is entitled to qualified immunity because the plaintiff has not produced evidence to show that he took any action against her that was prohibited by federal law. And the Court agrees. Even giving the plaintiff the benefit of assuming that the rights allegedly violated were clearly established, she has failed to produce evidence that Sturdy took any action in violation of those rights. Accordingly, the Court will grant summary judgment as to all claims brought against Sturdy in his individual capacity.

*iii. Kenney*

The defendants argue that Kenney is entitled to qualified immunity on the grounds that

> Kenney's personal involvement in these matters consist of the following: 1) he reviewed incident reports from other trainees regarding Barry's conduct in the training course, 2) he reviewed the email from William Boucher to Tom English and Ken Sturdy regarding Barry's conduct in the training course, 3) he made the decision to terminate Barry's employment based on the reports of her poor behavior, including her gossiping, sharing private information regarding other classmates, and her poor judgment.

Filing 85 at 45.

And the plaintiff has not produced evidence disputing this characterization. Indeed, the plaintiff takes the position that Kenny, [sic] was

primarily an unwitting cat's paws [sic] for Boucher's discriminatory intent." Filing 89 at 24. Accordingly, the Court will grant summary judgment as to all claims brought against Kenney in his individual capacity.

***

In sum, the plaintiff's claims for sex discrimination and civil conspiracy, as well as the plaintiff's claims against the defendants Michael Kenney and Ken Sturdy in their individual capacities, will be dismissed. The plaintiff's claims that she was denied reasonable accommodations for her disability, terminated on the basis of her disability, subjected to a hostile work environment on the basis of her disability, and retaliated against for engaging in conduct protected by the Rehabilitation Act, as well as the Rehabilitation Act claims she has brought against Boucher in his individual capacity, will proceed to trial.

IT IS ORDERED:

1. The defendants' motion for summary judgment (filing 84) is granted as to the plaintiff's claims for sex discrimination and civil conspiracy, as well as to the plaintiff's claims against the defendants Michael Kenney and Ken Sturdy in their individual capacities.

2. The defendants' motion for summary judgment is denied as to the plaintiff's claims that she was denied reasonable accommodations for her disability, and terminated on the basis of her disability; as well as to her Rehabilitation Act claims brought against Boucher in his individual capacity.

Dated this 16th day of June, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge